**Paget Wilson HINCH, Appellant,**

v.

**LUCY WEBB HAYES NATIONAL TRAINING SCHOOL FOR DEACONESSES and MISSIONARIES CONDUCTING SIBLEY MEMORIAL HOSPITAL, Appellee.**

No. 01–CV–1297.

District of Columbia Court of Appeals.

Argued Sept. 5, 2002.

Decided Jan. 9, 2003.

Kim M. DiGiovanni, Bowie, MD, for appellant.

Adam W. Smith, Washington, DC, with whom Gary W. Brown was on the brief, for appellee.

Before STEADMAN, SCHWELB and WASHINGTON, Associate Judges.

STEADMAN, Associate Judge:

This medical malpractice case tests the scope of what is generally called the "sham affidavit" doctrine. The trial court granted the summary judgment motion of appellee Sibley Memorial Hospital on the ground that appellant Hinch had failed to establish by expert medical testimony that Sibley's alleged negligence had caused Hinch's claimed injuries. The trial court did so notwithstanding the fact that a medical expert by affidavit attached to Hinch's opposition to Sibley's summary judgment motion stated that in her opinion, to a reasonable degree of medical certainty, Sibley's negligent acts were more likely than anything else to have been the cause of Hinch's injuries. The trial court invoked the "sham affidavit" doctrine and disregarded this expert opinion because, in the trial court's view, the affidavit contradicted the prior deposition testimony of the expert. We conclude that the discrepancies between the deposition testimony and the assertion in the affidavit are not sufficiently stark and contradictory to warrant the application of the doctrine. Accordingly, we vacate the grant of summary judgment and remand for further proceedings.

I.

Plaintiff-appellant Hinch was admitted to Sibley on September 13, 1996, complaining of abdominal pain. When Hinch was admitted, hospital employees noted her current medications on her chart, including Dilantin, an anticonvulsant. Hinch was diagnosed with small bowel obstruction after exploratory surgery on September 15. On September 20, Hinch began to suffer seizures while a central line (a catheter passed through her chest to her heart) was being removed. She was admitted to intensive care and remained comatose for three days. She later underwent extensive re-

habilitation. The malpractice claim is based on Sibley's alleged failure to administer her Dilantin medication as prescribed and the consequent seizures and injury. Seeking summary judgment, Sibley asserted that Hinch had failed to show by expert medical testimony a causal connection between any mistakes made in administering Dilantin and Hinch's seizures.

In opposing the motion for summary judgment, Hinch relied principally upon a neurologist, Dr. Helene Emsellem, who had treated Hinch both before and after her hospitalization.[1] In her extensive deposition, Dr. Emsellem set forth a theory that Hinch suffered a prolonged seizure, possibly a *status epilepticus,* a potentially fatal condition, which could have resulted from the withdrawal of anti-seizure medication. Dr. Emsellem stated her theory was corroborated by the hospital records showing mistakes in dosing Dilantin and transcription errors from a treating physician's orders. However, Dr. Emsellem testified Hinch's condition could have arisen from other causes such as cardiopulmonary arrest or the removal of the central line. Because of the expert's lack of certainty, the court thought that this testimony established, at most, "that an event occurred in the hospital associated with a seizure and a cardiopulmonary arrest and that [Plaintiff's] baseline neurological deficits were worse afterwards." In the trial court's view, during her deposition, Dr. Emsellem was "unable or unwilling to state to a reasonable degree of medical certainty that Plaintiff's condition was caused by sub-therapeutic levels of Dilantin."

However, in her opposition to summary judgment, Hinch had supplemented the Emsellem deposition with a later signed affidavit. In this affidavit, Dr. Emsellem states that it is her opinion "to a reasonable degree of medical certainty, that the prolonged seizures suffered by Paget Hinch were precipitated by the failure to administer the prescribed Dilantin to Ms. Hinch, and are more likely than anything else to have been the cause of Ms. Hinch's injuries, as described more fully by me in written reports and deposition testimony provided in these proceedings." The trial court refused to consider the affidavit because, in the trial court's view, it contradicted the expert's deposition, rather than correcting or supplementing it, and was merely an attempt to create a sham issue of material fact.[2] Thus disregarding the affidavit, the trial court ruled that Hinch lacked sufficient evidence on the issue of causation to withstand the summary judgment motion.

## II.

We review the trial court's grant of summary judgment under the familiar and oft-stated *de novo* standard, making an independent review of the record in the light most favorable to the non-moving party. *See, e.g., Boulton v. Inst. of Int'l Educ.,* 808 A.2d 499, 501–02 (D.C.2002). Because Hinch makes a negligence claim, she has the burden of proving the applicable standard of care, a deviation from that standard by the defendant, and a causal connection between the deviation and her injury. *District of Columbia v. Watkins,* 684 A.2d 395, 401 (D.C.1996). Only the third requirement is at issue here,[3] and it

---

1. Hinch had two other expert medical witnesses, but the trial court determined that neither's testimony was sufficient to establish causation.

2. The trial court saw contradictions in the affidavit's certainty both as to Hinch's prolonged seizures and as to the most likely causal relation to her injuries.

3. In a footnote, the trial court suggested that

is not questioned that the affidavit of Dr. Emsellem, if taken into account, would be sufficient to withstand summary judgment.[4] Therefore, the issue on this appeal is whether the trial court properly disregarded that affidavit.

■ The "sham affidavit" doctrine appears to be traceable in its origin to *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir.1969). Under the doctrine, courts will disregard an offsetting affidavit that is submitted to withstand a motion for summary judgment when the affidavit contradicts prior deposition testimony without adequate explanation and creates only a sham issue of material fact. Since *Perma*, all federal circuits that have considered applying the sham affidavit doctrine have adopted it in some form, as have most states. The purpose of the doctrine is to spare the moving party the needless effort and cost when a party's prior statements show no actual factual dispute exists. The doctrine also assures that frivolous lawsuits will not be extended merely by last minute affidavits which contradict prior testimony and are unexplained.[5]

This court adopted and applied the sham affidavit doctrine in *Hancock v. Bureau of Nat'l Affairs.* 645 A.2d 588 (D.C.1994). We expounded the doctrine in this jurisdiction as follows:

[w]hen, on a motion for summary judgment, a judge is confronted with a party's deposition and affidavit which contradict each other, the deposition is usually considered more reliable. However, "the court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material issue of fact." The courts have noted an exception to his general prohibition against a judge excluding a contradictory affidavit from consideration of a summary judgment motion when the affidavit constitutes an attempt to create a sham issue of material fact. [citing, inter alia, *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 288 U.S.App. D.C. 157, 166, 924 F.2d 1114, 1123 (D.C.Cir. 1991), *cert. denied*, 502 U.S. 822, 112

---

Dr. Emsellem's testimony was deficient in not setting forth a national standard of care. Appellee makes no effort to defend the grant of summary judgment on that ground and we therefore do not address it.

4. Evidence is adequate to establish proximate cause in malpractice cases if the expert "states an opinion, based on a reasonable degree of medical certainty, that a defendant's negligence is more likely than anything else to have been the cause (or a cause) of a plaintiff's injuries." *Watkins, supra*, 684 A.2d at 402. A reasonable degree of medical certainty does not require the expert be personally certain of the cause or that the cause is discernable to a certainty, only that the expert has an objectively well-founded conviction that the likelihood of one cause is greater than another. *Id.* However, medical testimony as to the mere possibility of a causal relation is not sufficient. *Grant v. Am. Nat'l Red Cross*, 745 A.2d 316, 320 (D.C.2000).

5. There is no need here to replicate the careful discussion of the development of the doctrine and its adoption by both federal and state courts, with extensive case citations, contained in the recent case of *Shelcusky v. Garjulio*, 172 N.J. 185, 797 A.2d 138 (2001), where the Supreme Court of New Jersey addressed for the first time whether to adopt the doctrine in that jurisdiction. Unlike the outcome in New Jersey, the highest court of Maryland refused to adopt the doctrine, also with extensive discussion, by the 4–3 decision in *Pittman v. Atlantic Realty Co.*, 359 Md. 513, 754 A.2d 1030 (2000). For text discussion, *see, e.g.*, Collin J. Cox, Note, *Reconsidering the Sham Affidavit Doctrine*, 50 DUKE L.J. 261 (2000); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2726 at 448–50 (3d ed.1998).

S.Ct. 85, 116 L.Ed.2d 57 (1991)] The affidavit will be considered if it clarifies confusing or ambiguous deposition testimony or is based on newly discovered evidence or evidence to which the deponent did not have access at the time of deposition.... "Where a party emphatically and wittingly swears to a fact, it bears a heavy burden—even in the summary judgment context—when it seeks to jettison its sworn statement." No explanation of the contradiction in appellant's statements and deposition was provided, and therefore the trial court properly concluded there was no genuine issue of material fact .... [645 A.2d at 590–91 (most citations omitted)]

■ Thus, for the doctrine to apply, the affidavit must clearly contradict prior sworn testimony, rather than clarify confusing or ambiguous testimony, and the contradiction must lack credible explanation, such as new evidence. A party may not create a material issue of fact by simply contradicting prior sworn testimony, thus using the affidavit as a sham. In *Hancock*, which involved a claim of age-based employment discrimination, the plaintiff had testified in a deposition that he had decided to retire by a certain date and then later submitted an affidavit stating he had not made a final decision to retire on that date. The contradiction was clear and stark and no explanation was provided. This court held that the affidavit was properly disregarded.

Our sister federal court in this jurisdiction has similarly applied the doctrine. *Pyramid Securities, supra,* cited and followed by us in *Hancock,* involved a sworn statement that a party had seen a ledger and had sufficient knowledge of the facts and then a later affidavit stating he had not even seen the ledger. The District of Columbia Circuit granted summary judgment because the plaintiff's affidavit impermissibly attempted to create a material issue by merely contradicting its prior testimony. Likewise, the federal district court in this jurisdiction has characterized the situations that permit application of the sham affidavit doctrine as arising when a deponent has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact and then that party attempts to create a material issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Reetz v. Jackson,* 176 F.R.D. 412, 414 (D.D.C.1997). That case involved the issue of informed consent. Plaintiff stated in her deposition that she would have gone ahead with the operation even if she had been told that the surgical devices were not FDA-approved. By affidavit, she contradicted this "damning testimony" by stating that she did not then or now know what the FDA was or what it did.

In contrast to the clear contradictions in those cases, the Eleventh Circuit has examined the distinction between discrepancies which demonstrate clear shams and those that create an issue of credibility or go to the weight of the evidence. *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986). In *Tippens* the court reversed the trial court's grant of summary judgment because the inconsistencies between an affidavit and later taken deposition testimony did not rise to the level of creating a sham affidavit. *Id.* The court focused on the fact that the witness did not attempt to recant prior statements, but rather corrected a prior inability to recall specific times, places and situations. *Id.* at 951–52. The court noted, similarly to the exposition of the doctrine in the above-cited cases, that affidavits should only be disregarded as shams when a party has given clear answers to unambiguous questions, which negate the existence of any genuine issue

of material fact and then attempts to create an issue with unexplained contradictory statements. *Id.* at 954.

■ Although Hinch does not detail why Dr. Emsellem's affidavit clarifies, amplifies, or supplements her deposition testimony rather than contradicts it, an analysis of the sham affidavit doctrine, interpretive case law, and the deposition itself, viewed in the light most favorable to the non-movant, compels us to conclude that the trial court exceeded the permissible limits of use of the doctrine. We cannot find within the deposition testimony any unambiguous assertion that is directly contradicted by the later affidavit. The trial court characterizes Dr. Emsellem's statements as showing a "mere possibility" that Sibley's failure to monitor the Dilantin levels caused Hinch's injury. The court goes on to focus upon an exchange where, when asked if Hinch's injuries were caused by sub-therapeutic levels of anticonvulsants, Dr. Emsellem explained,

> [i]t's my testimony that it was caused by the cluster of events that occurred. I can't sit here and tell you that it was the code [referring presumably to the code blue situation] and having to be administered CPR over a period of time or prolonged seizures or repetitive seizures that may have occurred. It's the cluster of those events that caused that, and I cannot tease that apart for you.

We must conclude that a "sham" would be too expansive a characterization of the testimony and the later affidavit. Unlike the cases applying the sham affidavit doctrine, Dr. Emsellem's statements do not unambiguously and directly contradict themselves; she does not seek to jettison an emphatic sworn statement. Instead, as we read the situation, again viewing matters as we must in the light most favorable to the non-movant, her affidavit clarifies a rather rambling and confusing deposition in which the witness and counsel engaged in a somewhat academic and unfocused discussion of the possible hypothetical causes of Ms. Hinch's hospital condition. We think that a fair interpretation of the totality of Dr. Emsellem's testimony is that as a candid medical expert she perceived that there were several possible explanations for Hinch's injuries, including the removal of the central line, cardiopulmonary arrest, and prolonged seizures from the lack of Dilantin. All of them must be considered as possibilities, and she could not "tease apart" which was in fact the cause. But this is not the same as saying that she was unable to say which of the possible causes was "more likely than any other" to have been the cause (or a substantial cause). Counsel simply failed to ask her that precise question. That lack was rectified by the subsequent affidavit.

As the cited cases indicate, at a minimum, for the sham affidavit doctrine to apply, there must be a clear and explicit contradiction between what is said at the deposition and what is said in the affidavit. This is particularly the case where, as here, it is not a party to the litigation or a closely related witness who is changing sworn testimony, but is instead a medical professional and expert witness with no apparent direct interest in the litigation. The "sham affidavit" doctrine cannot be stretched so far as to encompass the situation before us in this appeal.

Accordingly, the trial court's grant of summary judgment must be reversed and the case remanded for further proceedings.

*Reversed and remanded.*