**NEWS WORLD COMMUNICATIONS, INC., Appellant,**

v.

**Elaine J.S. THOMPSEN, Appellee.**

**No. 04–CV–346.**

District of Columbia Court of Appeals.

Argued May 24, 2005.

Decided July 14, 2005.

---

Dale A. Cooter, Washington, DC, for appellee.

Before SCHWELB and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

SCHWELB, Associate Judge:

A jury awarded Elaine J.S. Thompsen $100,000 on her claim of unjust enrichment against News World Communications, Inc. (the Times), a corporation which publishes a daily newspaper known as *The Washington Times*. The Times filed a timely post-trial motion for Judgment as a Matter of Law (JMOL) or, in the alternative, for a new trial, relying, *inter alia*, on a statute of limitations defense which it had asserted in pretrial motions and throughout the trial. On March 11, 2004, the trial judge denied the Times' post-trial motion. Judgment was entered on the verdict, and the Times appealed, again contending, *inter alia*, that Ms. Thompsen's claim was time-barred.

To decide this appeal, we must determine when the statute of limitations begins to run in a case of unjust enrichment. The issue is a novel and difficult one, and the parties have not provided us with, nor have we found, any applicable precedent in this jurisdiction. Although reasonable minds could differ as to the proper outcome, we follow the approach of courts in other jurisdictions which have addressed comparable issues, and which have held that the statute of limitations begins to run when the plaintiff's last service has been rendered and compensation has been wrongfully withheld. Applying this principle to the present record, we reverse.

## I.

### THE TRIAL COURT PROCEEDINGS

A. *Ms. Thompsen's allegations.*

According to Ms. Thompsen's complaint, which was filed on July 22, 1998, the

Allen V. Farber, with whom James A. Barker, Jr., Washington, DC, was on the brief, for appellant.

events that gave rise to this action began in September 1994, when Ms. Thompsen met Janet Naylor, who was then a political reporter for the Times. Ms. Thompsen told Ms. Naylor that she had an idea for a family magazine for the Times. Ms. Naylor was receptive, and she put Ms. Thompsen in touch with Michael Mahr, the newspaper's Advertising Director. In October 1994, Mr. Mahr asked Ms. Thompsen to fax him her proposal, and on November 17, 1994, Ms. Thompsen did so.

Ms. Thompsen further alleged in her complaint that on November 29, 1994, Ms. Thompsen met with Mr. Mahr and several other representatives of the Times at the newspaper's New York Avenue office. At that meeting, according to Ms. Thompsen,

> Mr. Mahr expressed great enthusiasm for Ms. Thompsen's ideas. He also asked what monetary remuneration Ms. Thompsen sought for the idea, and himself suggested one hundred thousand dollars ($100,000.00) for the idea, and two hundred thousand dollars ($200,000.00) for a consulting position to develop the idea. Ms. Thompsen responded that the amount of the remuneration would be discussed later.[1]

On December 1, 1994, at Mr. Mahr's request, Ms. Thompsen faxed two proposed layouts to Mr. Mahr, one for the *Family Times* and one for the *Kids Times*. She followed up these submissions with "a marketing strategy and commercial ideas" for the proposed publications. On December 6, 2004, Mr. Mahr confirmed receipt and "indicated [that] he desired to go forward with Ms. Thompsen's proposals." Mr. Mahr explained that he would make some changes in his department "be-

fore the project could begin," but that this would be completed by Christmas.

Ms. Thompsen further alleged in her complaint that on January 5 or 6, 1995, after some delay, Mr. Mahr telephoned Ms. Thompsen and advised her that "[i]t's all going to happen; it is all going to take place." On February 9, 1995, Mr. Mahr left a message on Ms. Thompsen's answering machine that he wanted to get started with their project. Less than two months later, however, there was a dramatic turn-around on the part of the Times. On April 4, 1995, according to Ms. Thompsen's complaint,

> Mr. Mahr telephoned Ms. Thompsen at home. He stated that the project was in the works. A family magazine was being developed and it would be called "Parenting." Mr. Mahr told Ms. Thompsen that her ideas had not been novel and she would not be paid for her ideas or for the work she had done.
>
> ... In June 1997, the Times published its first edition of its new weekly supplement, the "Family Times."

Ms. Thompsen claims that the new supplement was similar to, and based upon, her ideas and work. She testified that shortly after April 4, 1995, she consulted legal counsel.

B. *The disposition of the Times' motion to dismiss.*

On July 22, 1998, as a result of the foregoing events, Ms. Thompsen filed suit against the Times. Her initial complaint contained five counts: I. breach of express contract; II. breach of implied contract; III. promissory estoppel; IV. conversion; and V. breach of quasi-contract.[2] The

---

1. At trial, however, Ms. Thompsen testified that at the November 29, 1994 meeting, she accepted the $100,000 proposal.

2. "Breach of quasi-contract" is really a euphemism for a claim of unjust enrichment; a quasi-contract is not an agreement one can "break."

Times moved to dismiss all of Ms. Thompsen's claims as time-barred, invoking the District's three-year statute of limitations for contract claims. *See* D.C.Code § 12–301(7) (2001). On November 17, 1998, the first motions judge dismissed as time-barred the counts of the complaint based on breach of express contract, breach of implied contract, and promissory estoppel, but he denied the motion to dismiss the claims for conversion and unjust enrichment because, in the judge's view, "the statute of limitations on these two counts did not start [to run] until June 1997, when the Times published its first edition of the *Family Times,* because logic and the law require actual use of Plaintiff's idea to commence these claims." With respect to the quasi-contract count, the judge wrote that

> the concept of quasi-contract provides a basis to prevent unjust enrichment in the absence of an obligation. Black's Law Dictionary 1120 (5th ed. 1979). By definition, the quasi-contract claim is clearly distinct from the first three contract claims in the complaint. Essentially, breach of contract involves causing an injury to the Plaintiff, while unjust enrichment involves conferring a benefit on the Defendant.

> Thus, even if Defendant's failure to pay Plaintiff for her ideas constituted a breach of contract, Defendant would not have been unjustly enriched if it had never used Plaintiff's ideas. But, if the Defendant used Plaintiff's ideas in publishing the "Family Times" without giving Plaintiff credit or compensation at that time, then the Times was unjustly enriched. As such, a quasi-contract claim could not commence until June 1997, when the first "Family Times" was published.

*C. The amended complaint and the trial.*

Following the dismissal of the first three counts of her initial complaint, Ms. Thompsen filed an amended complaint containing only two claims: 1. conversion; and 2. breach of quasi-contract. The Times filed a motion for summary judgment, again arguing, *inter alia,* that Ms. Thompsen's claims were barred by the three-year statute of limitations. In an order entered on January 13, 2000, the second motions judge (who was also the trial judge) rejected this contention as contrary to "the law of the case," and she reaffirmed that "the conversion and quasi-contract claims did not ripen until the defendant allegedly used the plaintiff's proposal by publishing the family supplement in June 1997."

The case proceeded to trial in May 2000. Ms. Thompsen testified generally, though with some variation,[3] in accordance with the allegations of her complaint but added some details. Ms. Thompsen stated that Mr. Mahr wanted to meet with her to discuss this "new supplement," which was "your idea," and that the people at the Times were "actually working on it already." Thus, according to Ms. Thompsen, the Times' refusal to pay her came after the Times had began to use the fruits of her labor. As noted by the trial judge in her written order denying the Times' post-trial motion for JMOL, Ms. Thompsen also testified that her proposal conferred a benefit on the Times as soon as she presented it.

The trial judge dismissed the conversion claim at the close of the plaintiff's case. At various stages of the trial, counsel for the Times reiterated his position that the unjust enrichment claim was time-barred, but the judge disagreed, and she allowed that claim to go to the jury. The jury returned a verdict in Ms. Thompsen's fa-

---

**3.** See, *e.g., note* 1, *supra.*

vor in the amount of $100,000. On March 16, 2004, the trial judge denied the Times' post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. This appeal followed.

## II.

## LEGAL ANALYSIS

### A. *The case law.*

Although the Times has also raised other alleged bases for reversal,[4] the only issue that we must reach in order to resolve this case is whether the claim for unjust enrichment should have been dismissed as time-barred. Both trial judges concluded that the statute of limitations did not begin to run on this claim until June 1997, when the Times published its first edition of the *Family Times,* but neither judge cited any supporting case law. Ms. Thompsen's brief is likewise bereft of any relevant authority. As the trial judge recognized in her order of March 16, 2004, "what constitutes the accrual of a cause of action is a question of law," citing *Smith v. Brown & Williamson Tobacco Corp.,* 108 F.Supp.2d 12, 15 (D.D.C.2000), and we therefore review *de novo* the trial court's resolution of this issue. We conclude that the statute of limitations began to run no later than April 4, 1995, when, according to Ms. Thompsen, the Times, having encouraged Ms. Thompsen's efforts, having received the benefit of her work and ideas, having expressed the intention to use her work product, and having already begun to utilize it, nevertheless informed her that she would not be compensated.

This court has had occasion to discuss the "unjust enrichment" theory of quasi-contract in a number of cases, most recently in *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.,* 870 A.2d 58 (D.C.2005); *see also Vereen v. Clayborne,* 623 A.2d 1190, 1193–94 (D.C. 1993); *4934, Inc. v. District of Columbia Dep't of Employment Servs.,* 605 A.2d 50, 55–56 (D.C.1992). We have summarized the essence of the doctrine as follows:

> For [the plaintiff] to recover on a quasi-contractual claim, he must show that [the defendant] was unjustly enriched at his expense and that the circumstances were such that in good conscience [the defendant] should make restitution.

*Vereen,* 623 A.2d at 1194. The point at which, in a quasi-contract case based on the theory of unjust enrichment, the statute of limitations begins to run is a question of first impression in the District of Columbia. Case law from other jurisdictions, however, supports the position taken by the Times.

It is undisputed that the statute of limitations begins to run when a claim accrues, and that a cause of action accrues when its elements are present, so that the plaintiff could maintain a successful suit. *Hendel v. World Plan Executive Council,* 705 A.2d 656, 660–61 (D.C.1997); *Pancake House, Inc. v. Redmond,* 239 Kan. 83, 716 P.2d 575, 579 (1986). Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust. *See 4934, Inc.,* 605 A.2d at 55.[5]

---

**4.** The Times asserts, *inter alia,* that although Ms. Thompsen's contract claim had been dismissed as time-barred, she presented her unjust enrichment claim as though it were a contract case. Because we resolve the case on other grounds, we do not reach the merits of this contention.

**5.** In *Jordan Keys,* 870 A.2d at 65 n. 4, we quoted the most recent articulation of the applicable principles, as set forth in the RE-

"[T]he cause of action [for unjust enrichment] accrues upon presentment and subsequent rejection of a bill for services, or as soon as the services were rendered." *Zic v. Italian Gov't Travel Office*, 149 F.Supp.2d 473, 476 (N.D.Ill. 2001). The court in *Zic* emphasized that "the essence of a *quantum meruit* claim ... is not the plaintiff's expectancy of payment, but the unjust enrichment of the defendant," and held that the defendant was unjustly enriched when the services were rendered and when payment was refused. *Id.* A claim for unjust enrichment only accrues, however, when the enrichment becomes unjust; the statute of limitations "starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution." *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 192 A.D.2d 501, 596 N.Y.S.2d 435, 437 (2d Dept.1993).

In *Baer v. Chase*, 392 F.3d 609 (3d. Cir.2004), the court decided an issue similar to the one presented here. In that case, the plaintiff, Robert V. Baer, alleged that he had furnished information, material, and personal stories to David Chase, the producer and director of the television series *The Sopranos*, and that Chase thereafter utilized the material that Baer had provided without compensating Baer. Baer filed suit, seeking recovery under various legal theories, including unjust enrichment. At his deposition, Baer testified that the last services he had provided to Chase were rendered in October 1995. The action was not brought until May 15, 2002, and thus not within New Jersey's six-year statute of limitations. Baer contended, however, that under the discovery rule, the limitations period did not begin to run until 1999, when *The Sopranos* was first aired, and that his suit therefore was not time-barred. Baer explained that his position had been

> that I would perform the services while assuming the risk that if the show failed [Chase] would owe me nothing. If, however, the show succeeded he would remunerate me in a manner commensurate to the true value of my services.

392 F.3d at 614. Thus, Baer maintained, he could not know whether he was entitled to remuneration until *The Sopranos* became a success, and the claim therefore did not accrue until the show opened on television.

The trial court granted summary judgment in Chase's favor on the unjust enrichment claim, holding that it was time-barred. On appeal, the United States Court of Appeals rejected Baer's claim that the discovery rule applied, holding instead that the statute of limitations began to run upon the last rendition of services by the plaintiff:

> [W]hile most jurisdictions have not ruled explicitly on whether the discovery rule

STATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 29 (Tentative Draft No. 3, (2004)):

(1) A person who has conferred a benefit on a recipient as the performance of a contract with a third person is entitled to restitution from the recipient upon the failure of performance by the third person, but only as necessary to prevent unjust enrichment. In this context, the conclusion that a recipient would be unjustly enriched by the retention of a given benefit requires a determination that

(a) absent liability in restitution, the claimant will not be compensated for the performance in question, and the recipient will retain the benefit of the claimant's performance free of any liability to pay for it;
(b) liability in restitution will not subject the recipient to an obligation from which it was understood by the parties that the recipient would be free; and
(c) liability in restitution will not subject the recipient to a forced exchange.

should apply in *quantum meruit* cases, those that have addressed the issue have chosen not to utilize the discovery rule, but rather to employ a "last rendition of services" test. Thus, in *Rabinowitz v. Mass. Bonding & Insurance Co.*, 119 N.J.L. 552, 197 A. 44, 47 ([N.J.Err. & App.]1938), the court used a last "rendition of services" calculation in an unjust enrichment claim. Additionally, the court in *Kopin* [*v. Orange Prods., Inc.*], 297 N.J.Super. 353, 688 A.2d [130], 140 [(N.J.Super.A.D.1997)], cited a New York case granting summary judgment predicated on the statute of limitations in a *quantum meruit* case in which there was a failure of proof as to when the plaintiff completed his performance, *Wint v. Fields*, 177 A.D.2d 425, 576 N.Y.S.2d 266 (N.Y.App.Div.1991). *See also GSGSB, Inc. v. New York Yankees*, 862 F.Supp. 1160, 1171 (S.D.N.Y.1994) ("[A] cause of action for *quantum meruit* begins to run when the final service has been performed.") (citing *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 722 (S.D.N.Y. 1986)); *Martin v. Camp*, 219 N.Y. 170, 114 N.E. 46 ([N.Y.]1916); *County of Broome v. Board of Educ.*, 65 Misc.2d 418, 317 N.Y.S.2d 486, 489 (N.Y.Sup.Ct. 1971).

392 F.3d at 622–23 (citations omitted). Thus, although Baer expected payment only if and when *The Sopranos* succeeded, *i.e.*, was shown on television, his expectation did not affect the date on which the statute of limitations began to run:

> In other words, Baer's belief that he was going to get paid if and when the show was a success is irrelevant because his understanding of his oral contract, even if correct, does not govern his quasi-contract claim inasmuch as a quasi-contract claim is not a "real" contract based on mutual consent and understanding of the parties. The essence of a quasi-contract claim is not the expectancy of the parties, but rather the unjust enrichment of one of them. It therefore would be inappropriate to look at Baer's expectations of payment, rather than at the services he provided Chase.

*Id.* at 623. The court also quoted and adopted the reasoning of the court in *Zic*, 149 F.Supp.2d at 475–76, and concluded that "[t]he district court was therefore correct in utilizing a last rendition of services test to analyze whether Baer's claim was time-barred." 392 F.3d at 623.[6] *See also Freedman v. Beneficial Corp.*, 406 F.Supp. 917, 923 (D.Del.1975) (plaintiff who provided business ideas to defendants in expectation of compensation "had a right to sue [for unjust enrichment] as soon as defendants began using his idea for their benefit").

B. *Application of the case law to the record.*

◼ As we have noted at the outset, the issue before us is not free of difficulty. One might reasonably disagree with the result reached by the court in *Baer v. Chase;* counsel for the plaintiff in that case might plausibly have questioned whether he could have filed a meritorious action before *The Sopranos* reached the television screen, when, according to Baer's own testimony, he did not expect

---

**6.** Baer filed an affidavit in opposition to the motion for summary judgment in which he asserted, contrary to his deposition testimony, that he provided his final services to Chase in 1997, not 1995. The appellate court remanded the case to the district court for a determination whether, under the appropriate legal standard the affidavit could properly be stricken as "sham." *Id.* at 624–27; *see Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 577–78 (2d Cir.1969); *cf. Hinch v. Lucy Webb Hayes Nat'l Training Sch.*, 814 A.2d 926, 929–31 (D.C.2003).

remuneration from Chase in the event that Baer's suggestions for the series came to naught. Nevertheless, the court's general analysis in *Baer* of the unjust enrichment doctrine is consistent with our precedents, and its approach to the statute of limitations issue is founded upon case law elsewhere and apparently represents the generally accepted approach. On the strength of the decision in *Baer* and in the other authorities cited, we conclude that in the present case, the statute of limitations began to run no later than April 4, 1995. By that date, Ms. Thompsen had performed her last service to the Times, the Times had declined to compensate her, and, according to Ms. Thompsen, the Times had begun to process the information and ideas that she had provided and had put them to use for the newspaper's own benefit. Indeed, by April 4, 1995, Ms. Thompsen had a stronger case than the plaintiff had in *Baer v. Chase*, for by that date she had been definitively told that she would not be paid; Baer had never encountered a comparable final refusal.[7]

The first motions judge ruled that "Defendant would not have been unjustly enriched if it had never used Plaintiff's ideas," but even assuming, *arguendo*, that the predicate for the judge's statement was sound,[8] it is not obvious to us that this ruling was correct. If one credits the allegations of the complaint, then by April 4, 1995, Ms. Thompsen had conferred a benefit on the Times, with the encouragement of the newspaper's personnel, by providing the Times with an idea for a family magazine, two proposed layouts, and a marketing strategy. The Times had

thus received something of value which it had not possessed before Ms. Thompsen provided it.

In any unjust enrichment case, the plaintiff must, of course, prove that the defendant's enrichment is *unjust*. See, e.g., *Vereen*, 623 A.2d at 1194. "[A] claim for unjust enrichment accrues only when the enrichment actually becomes unlawful,"[9] *T.E.A.M. Entm't, Inc. v. Douglas*, 361 F.Supp.2d 362, 369 (S.D.N.Y.2005), *i.e.*, where there has been a "wrongful act giving rise to a duty of restitution." *Congregation Yetev*, 596 N.Y.S.2d at 437. The difficult question is whether, on April 4, 1995, the Times' representation to Ms. Thompsen that she would not be compensated for her efforts, when the newspaper had the benefit of her ideas and proposals, could fairly be characterized as "unjust." Although her complaint did not explicitly address the point, it may well be that if Ms. Thompsen gave the matter any specific consideration, she may have anticipated payment from the Times only if and when her idea for a family supplement was in fact implemented by the newspaper. The plaintiff in *Baer* had precisely such an expectation, and common sense suggests that his understanding would hardly be unusual. If, for example, Ms. Thompsen had simply mailed her plan and suggestions to the Times without any invitation or encouragement from the newspaper, the Times obviously would not be unjustly enriched if it refused to pay for the unsolicited material. The doctrine of unjust enrichment does not give leave to every self-styled inventor or "idea person" to send his or her proposals to newspapers or oth-

---

**7.** Given the state of the record in this case, we need not decide whether the statute of limitations would have begun to run if the last service had been rendered, but if the Times had not communicated to Ms. Thompsen its refusal to compensate her.

**8.** According to Ms. Thompsen, the Times *had* begun to use her ideas and work by April 4, 1995, even though the *Family Times* had not yet appeared in print.

**9.** Perhaps "unjust" would be a more accurate word than "unlawful."

er organizations and then claim unjust enrichment if the purported beneficiary of his or her inventiveness declines to pay.[10]

In the present case, however, by the time that the newspaper declined to compensate her, the plaintiff had done a significant amount of work on behalf of, and induced by, the Times; the parties had dealings over a five-month period. Under like circumstances, the court held in *Baer* that the plaintiff's cause of action accrued upon the furnishing of his last service to Chase, notwithstanding Baer's admitted lack of any expectation that he would be paid if *The Sopranos* never made it to the television screen. Moreover, in the present case, Ms. Thompsen claimed that by Mr. Mahr's own admission, Ms. Thompsen's ideas and proposal were already "in the works"; in this respect, the reasoning in *Baer* applies *a fortiori*.[11] We therefore conclude that Ms. Thompsen's claim for unjust enrichment is time-barred.

### III.

### CONCLUSION

For the foregoing reasons, the judgment entered on the jury verdict is reversed. The case is remanded to the trial court with directions to dismiss Ms. Thompsen's complaint as time-barred.

*So ordered.*

---

10. Recognizing this potential inequity, the most recent draft of the RESTATEMENT, quoted by this court in *Jordan Keys*, 870 A.2d at 65 n. 4, limits recovery for unjust enrichment to circumstances where liability "will not subject the recipient to a forced exchange." See note 5, *supra*.

11. Mr. Mahr's statement to Ms. Thompsen that the family supplement would be called *Parenting* (instead of *Family Times* and *Kids Times*, as proposed by Ms. Thompsen) is surely of minimal consequence. In any event, in 1997 the newspaper inaugurated the *Family Times*.