UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN N. XEREAS,

   Plaintiff/Counter-Defendant,

 v.

MARJORIE A. HEISS, *et al.*,

   Defendants/ Counter-Plaintiffs.

Civil Action No. 12-456
DAR

**MEMORANDUM OPINION**

Two motions for summary judgment with regard to Plaintiff's claims in the Second Amended Complaint (ECF No. 102) have been under advisement, and will be addressed in detail herein: (1) Defendants' Motion for Summary Judgment as to the Second Amended Complaint (ECF No. 142) with the attached Memorandum of Law In Support of Their Motion for Summary Judgment ("Defs. Mem.") (ECF No. 142-1) and (2) Plaintiff's Motion for Partial Summary Judgment as to the Second Amended Complaint ("Pl.'s Mot.") (ECF No. 151). After careful consideration of the parties' submissions, and for the reasons that follow, the court concluded that it must grant Defendants' Motion for Summary Judgment as to Counts IV, VI, IX through XVII, XXII, XXIII, XXV, and XXVI; deny Defendants' Motion for Summary Judgment as to Counts I through III, V, VII, VIII, XVIII, and XIX; deny Plaintiff's Motion for Partial Summary Judgment; and dismiss Counts XX through XXII, and XXIV.

## I. BACKGROUND

After nearly five years of litigation and extensive discovery, the Plaintiff filed his Second Amended Complaint on August 22, 2017. *See* Plaintiff's Second Amended Complaint ("SAC") (ECF No. 102). Plaintiff's allegations arise out of a business agreement he entered into with

Defendants Dawson and Heiss in or around 2010.  Plaintiff alleges that, since 2005, he trademarked the use of "Riot Act" in connection with comedy-related services, registered domain names[1] related to the name Riot Act, and established business and personal e-mail accounts[2] at "riotactcomedy.com."  *See id*. at ¶¶ 16, 17.  Plaintiff conducted business under the Riot Act name from 2005 until he and Defendants Dawson and Heiss engaged in a business venture to open a Riot Act Comedy Club in 2010.  *See* SAC at ¶¶ 18-30.

Plaintiff alleges that he, Defendant Dawson, and Defendant Heiss agreed to launch the Riot Act Comedy Club, to which, Plaintiff would license the Riot Act trademark and domain names. *See id*. at ¶¶ 35-39.   Plaintiff Xereas, Defendant Dawson, and Defendant Heiss agreed to memorialize their planned business relationship and establish a corporate entity.   *See id*. at ¶ 40. Defendant Heiss prepared an Operating Agreement and Articles of Organization for a Riot Act DC, LLC, registering the LLC with the District of Columbia on May 6, 2010.  *See id*. at ¶44.  In November of 2010, Plaintiff, Defendant Dawson, and Defendant Heiss entered into an Amended Operating Agreement.  *See* Plaintiff's Statement of Undisputed Facts at ¶ 7 (ECF No. 151-2).

Neither the Operating Agreement, nor the Amended Operating Agreement, provided for the transfer, licensing, or assignment of ownership of the Riot Act trademark and domain names from the Plaintiff to the LLC.  *See id*. at ¶ 8.  Plaintiff attempted to finalize a written licensing agreement with Defendant Dawson in October of 2011, yet the parties never entered into a written agreement. *See id*. at ¶¶ 9-10.

In January of 2012, Defendants Dawson and Heiss each voted to remove Plaintiff from his day-to-day managerial responsibilities and restricted his access to his Riot Act email account.  *See*

---

[1] Such domain names include ""riotactcomedy.com," "riotactentertainment.com," "riotactcomedytheater.com," and "riotactrecords.com," "riotactentertainment.com," and "riotactrecords.com." See SAC at ¶ 16.
[2] For example, Plaintiff's e-mail account was "johnx@riotactcomedy.com." See SAC at ¶ 17.

*id*. at ¶¶ 15-16. In February of 2012, Plaintiff demanded the LLC cease and desist from any further use of the Riot Act trademarks and domain names. *See id*. at ¶ 19. Finally, Defendants Dawson and Heiss voted to remove Plaintiff as a managing member of the LLC in March of 2012. *See id*. at ¶ 20. On March 23, 2012. *See generally id*.

## II.    STANDARD OF REVIEW

### A.  Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Whether a fact is material is determined based on whether it might affect the outcome of the suit under the governing law. *Id*. The party seeking summary judgment must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 256 (internal quotation marks omitted). "Conclusory allegations without any factual support in the record cannot create a genuine dispute sufficient to survive summary judgment." *Coates v. Washington Metro. Area Transit Auth.*, Civil Action No. 15-02006, 2018 WL 1210861, at *2 (D.D.C. Mar. 8, 2018) (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009)). Moreover, where "a party fails to properly support an assertion of fact or fails to properly

address another party's assertion of fact," the district court may, among other actions, "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences" are not the Court's role; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255; *see also Figueroa v. Tillerson,* Civil Action No. 16-00649, 2018 WL 646883, at *4 (D.D.C. Jan. 31, 2018) ("When deciding a motion for summary judgment, the Court must 'examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to' the nonmoving party.") (quoting *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016)). "If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate." *Coates*, 2018 WL 1210861, at *2 (citing *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009)). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Put another way, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

In addition, Local Rule 7(h), requires "[a]n opposition ... [to include] a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, ... [and] references to the parts of the record relied on to support the statement," LCvR 7(h)(1). Federal Rule of Civil Procedure 56(c)(1), similarly requires

4

that "[a] party asserting that a fact ... is genuinely disputed must support the assertion by [ ] citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). Local Rule 7(h) "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 110 F. Supp. 3d 111, 115 (D.D.C. 2015) (quoting *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C.Cir.1996)). "Because [LCvR 7(h)] helps the district court maintain docket control and decide motions for summary judgment efficiently, the D.C. Circuit has repeatedly upheld district court rulings that hold parties to strict compliance with this rule." *Lockhart v. Coastal Int'l Sec., Inc.,* No. 11-02264, 2013 WL 6571605, at *1, n.2 (D.D.C. Dec. 14, 2013) (internal quotation marks omitted) (quoting *Robertson v. Am. Airlines, Inc.,* 239 F. Supp. 2d 5, 8 (D.D.C. 2002)).

Plaintiff's counsel's non-compliance with LCvR 7(h)(1) "makes the work of the Court more onerous." *Said v. Nat'l R.R. Passenger Corp.*, No. CV 15-1289 (RBW), 2018 WL 3369676, at *1–2 (D.D.C. July 10, 2018) (citing *Lawrence v. Lew*, 156 F.Supp.3d 149, 155–56 (D.D.C. 2016)); *see generally* Plaintiff's Responses to Defendants' Statement of Undisputed Facts (ECF No. 152-1). A party "may not be heard to complain that the district court has abused its discretion by failing to compensate for" an inadequate effort to file a proper Rule 7(h) statement. *Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 110 F. Supp. 3d 111, 115 (D.D.C. 2015) (quoting *Jackson*, 101 F.3d at 151).

Nonetheless, in the interest of resolving the pending summary judgment motions without further delay, and because "strong policies favor the resolution of genuine disputes on their merits," *Jackson v. Beech*, 636 F.2d 831, 832 (D.C. Cir. 1980), the court declines to "disregard" all of the facts and exhibits proffered by Plaintiff, or otherwise deem the Defendant's Statement of

Undisputed Facts admitted. Rather, the court will consider the Plaintiff's facts and exhibits to the extent that they are relevant, material, and supported by evidence in the record that is *readily identifiable* by the court. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *see also Chambliss v. Nat'l R.R. Passenger Corp.*, Civ. Action No. 05-2490 (CKK), 2007 WL 581900, at *2 (D.D.C. Feb. 20, 2007) ("Despite [the p]laintiff's abject failure to comply with his obligations under Local Civil Rule 56.1 . . ., in the interest of justice, the Court has nevertheless undertaken a review of the record evidence . . . in order to determine whether that evidence raises genuine issues of fact."). Furthermore, the court will make an independent assessment as to whether the facts in the Defendant's Statement of Undisputed Facts are indeed undisputed by the Plaintiff. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court *may*[ ] . . . consider the fact undisputed for purposes of the motion." (emphasis added)).

## B. Dismissal for Failure to State a Claim

In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, this court accepts well-pleaded factual allegations in the complaint as true and interprets them in the light most favorable to the plaintiff. *Howard Univ. v. Watkins*, 857 F.Supp.2d 67, 71 (D.D.C.2012) (citing *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C.Cir. 2004)). The motion to dismiss may be granted where facts alleged in the complaint do not raise a right to relief above the speculative level, or fail to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Henok v. Chase Home Finance*, 922 F.Supp.2d 110, 117 (D.D.C. Feb. 13, 2013).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqubal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

The plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556–57). "A complaint that pleads facts 'merely consistent with' a defendant's liability, 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

## III.    DISCUSSION

### A.  Defendants' Post-Discovery Declarations

As a preliminary matter, the Plaintiff contends that this court should disregard the post-discovery declaration Defendants submitted in conjunction with their motion for summary judgment on the basis of the "sham-affidavit rule." Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n.") at 3-5 (ECF No. 152). The sham-affidavit rule "precludes a party from creating an issue of material fact by *contradicting* prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony." *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C.Cir. 2007) (quoting *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C.Cir. 1991)) (emphasis added). However, "[i]f the supplemental affidavit [or declaration] does not contradict but instead clarifies the prior sworn statement, then it is usually considered admissible." *Id*. It then follows that Courts in this district have applied the sham-affidavit rule when "the affidavit [or declaration] . . . *clearly*

7

contradict[s] prior sworn testimony, rather than clarif[ies] confusing or ambiguous testimony, and the contradiction lacks credible explanation." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F.Supp.2d 152, 160 (D.D.C. 2008) (quoting *Hinch v. Lucy Webb Hayes Nat'l Training Sch.*, 814 A.2d 926, 930 (D.C. 2003)) (emphasis added).

Here, Plaintiff argues that these declarations should not be part of the record because they contradict the declarant's earlier testimony. Pl.'s Opp'n at 3. However, Plaintiff points to no contradictory testimony put forth by the Defendants. Instead, Plaintiff reasons that the sham-affidavit rule applies because "defendants have provided absolutely no evidentiary support." *Id.* at 4. For example, Plaintiff points out that Defendant Dawson's declaration states, "I never had the LLC reimburse me for expenses that were unrelated to Riot Act LLC" and "I did nothing to trick Mr. Xereas into making his investment." *Id.* Plaintiff contents that there is no corroborating evidence for these statements, and thus qualifies as a sham affidavit. *Id.* Plaintiff fails to address how these statements *contradict* prior sworn testimony, as required by the sham-affidavit rule. While an ambiguity exists attributable to the lack of "receipts, invoices, or other documents," Defendant Dawson's declaration does not clearly contradict prior testimony. Accordingly, the court will consider the declarations submitted by the Defendants as part of the record.

## B. Plaintiff's Derivative Claims

To adequately bring a derivative action a plaintiff must allege, *inter alia*: "with particularity the efforts made by the plaintiff to obtain the action the plaintiff desires from the directors, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. *Saunders v. Hankerson*, 312 F. Supp. 2d 46, 67 (D.D.C. 2004) (quoting Fed. R. Civ. P. 23.1); *see also Levant v. Whitley*, 755 A.2d 1036, 1049–50 (D.C. 2000) (interpreting identical local rule). A plaintiff must also "fairly and adequately represent the interests of the . . . members similarly situated in

enforcing the right of the corporation or association." *Id.* "[F]actors such as 'economic antagonism' and the 'use of the derivative action as leverage in a corporate or associational struggle' may render a particular plaintiff an inappropriate representative in a Rule 23.1 action." *Saunders*, 312 F. Supp. 2d at 69. Though this court finds, for the reasons offered by Plaintiff, that Plaintiff's demand on Defendants Dawson and Heiss would have been futile, the nature of Plaintiff's derivative claims lead this court to believe that these derivative claims act as leverage in Plaintiff's associational struggle with Defendants Dawson and Heiss.[3] *See, e.g., Wall St. Sys., Inc. v. Lemence*, 04-CIV-5299 (JSR), 2005 WL 292744, at *3 (S.D.N.Y. Feb. 8, 2005) ("an individual shareholder has a conflict of interest . . . when he simultaneously brings a direct and derivative action."). Therefore, the court grants summary judgment for the Defendants as it pertains to Plaintiff's derivative claims, in accordance with the discussion below.

## C. The Motion for Summary Judgment

### 1. The Lanham Act Claims

The Plaintiff first brings claims for trademark infringement, unfair competition, and cybersquatting. *See* SAC ¶¶ 244-56, 352-56. In support of his trademark infringement and unfair competition claims, Plaintiff contends that, because the Riot Act name "appears on the LLC's certificate of occupancy and ABRA license," the undisputed facts show that there is a "substantial likelihood of confusion," between the Plaintiff's mark and the Defendants' use of the mark. Pl.'s Opp'n. at 6-7. Defendants' contend that this use of the Riot Act name does not constitute

---

[3] It is also unclear to the Court whether Plaintiff's counsel even represents, or proports to represent, derivative plaintiff. *See* Notice of Appearance by Ishai Mooreville, (ECF No. 123); Motion for Leave for Erin Glavich to Appear *Pro Hac Vice*, (ECF No. 122); Notice of Appearance by Amber L. McDonald, (ECF No. 66); Motion for Leave for Tony C. Richa to Appear *Pro Hac Vice*, (ECF No. 38); Notice of Substitution of Counsel by W. Todd Miller, (ECF No. 25).

commercial use of the Riot Act mark. Defendants' Reply in Support of Summary Judgment ("Defs.' Reply") at 4 (ECF No. 156).

To prove trademark infringement, the Plaintiff must show that "(1) [he] owns a valid trademark, (2) [his] trademark is distinctive or has acquired a secondary meaning, and (3) there is a substantial likelihood of confusion between the party's mark and the alleged infringer's mark." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumb*, 69 F.Supp.3d 175, 201 (2014) (citing *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F.Supp.2d 1, 26 (D.D.C.2006)). The undisputed facts show that Plaintiff originally owned the mark, yet relinquished its use to the LLC until at least the beginning of 2012. *See* Pl.'s Opp'n. at 6. It is also undisputed that the trademark name is distinctive. *See* Pl.'s Mot. at 5-6. Thus, the only issue presented is whether there is a substantial likelihood of confusion between the Plaintiff's Riot Act trademark and the Defendant's use of the Riot Act name on the certificate of occupancy and the ABRA license.

To ascertain the likelihood of confusion, any of the following factors may apply:

(1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) evidence of actual confusion; (5) the defendants' purpose or reciprocal of good faith in adopting its own mark; (6) the quality of defendants' product; and (7) the sophistication of the buyers.

*Partido Revolucionario Dominicano (PRD) v. Partido Revolucionario Dominicano*, 312 F. Supp. 2d 1, 14 (D.D.C. 2004). Ultimately, to grant summary judgment, the court must ascertain whether "the ordinary person who is neither savant nor dolt, and who exercises a normal measure of the layman's common sense and judgment," *A1 Mortg. Corp. v. A1 Mortg. and Financial Services, LLC*, 2006 WL 1437744, *8 (W.D. Pa. 2006), would be confused by the Defendants' use of the Riot Act trademark.

Taking into account all of the factors, a genuine issue of material fact exists as to whether there is a substantial likelihood of confusion between the Plaintiff's trademark and the LLC's use

10

of the Riot Act name. Plaintiff's use of the mark is long standing, dating back to use in a prior venue since 2005, and was used in a similar fashion as intended at the formation of the LLC. *See* Pl.'s Mot. at 6. Plaintiff contends that the Defendants' use of the mark on the certificate of occupancy and ABRA license may lead a consumer to believe that the Riot Act name is affiliated with the LLC. *See id.* Defendant, however, contends that the display of the Riot Act name on government documentation does not rise to the level of "commercial use." Defs.' Reply at 4-5. Cases cited by the Defendants are inapposite. *See id.* Those cases do not address the use and display of an infringing mark. Though the facts, as put forth by the parties, appear undisputed at the outset, they are susceptible to divergent, yet justifiable, inferences. *See Coates*, 2018 WL 1210861, at *2. Therefore, Defendants' Motion for Summary Judgment as to Counts I, II, III, and Plaintiff's Motion for Summary Judgment as to Counts I and II are both denied.

Similarly, for Plaintiff to succeed on his cybersquatting claim, he must demonstrate that: "1) [his] trademark is a distinctive or famous mark entitled to protection; (2) Defendants' domain name is identical or confusingly similar to the Plaintiff's mark; and (3) Defendants 'register[ ], traffic[ ] in, or use[ ]' a domain name with the bad faith intent to profit from it. *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 152 (D.D.C. 2011) (quoting 15 U.S.C. § 1125(d)(1)(A)). "In determining whether a person has acted with bad faith, the Court may consider such factors as . . . whether the person has previously used the name to offer goods or services for sale, and whether the person intended to divert consumers from the infringed owner's website either for commercial gain or to tarnish or disparage the mark by creating a likelihood of confusion as to the source or sponsorship of the site." *Id.* (citing 15 U.S.C. § 1125(d)(1)(B)).

The Plaintiff has identified a genuine issue of material fact pertaining to the cybersquatting claim that prevents this court from granting summary judgment: whether the defendants had the

requisite bad faith intent to profit from the Riot Act domain. Plaintiff argues that the Defendants acted in bad faith when they allegedly exceeded their authorized use of the Riot Act domains after the Plaintiff's removal as a managing member. *See* Pl.'s Opp'n at 10. Defendants response simply contends that "Defendants had permission to use the domains as long as he was affiliated with the business," to which Plaintiff remains a 25% business owner. Defs.' Reply at 7. Whether the Defendants had the requisite intent to infringe on the Plaintiff's domains for commercial gain is a question of fact that cannot be decided at the summary judgment stage. Thus, the Defendants' Motion for Summary Judgment and the Plaintiff's Motion for Summary Judgment as to Count XIX is denied.

### 2. The Conversion Claim

The Plaintiff asserts a conversion claim against all Defendants. [4] *See* SAC ¶¶ 257-66. In support of this claim, he asserts that he "terminat[ed] any trademark license," and Defendants subsequently "disclaim[ed] any licensing rights they may have had." Plaintiff's Opp'n at 11. Plaintiff further asserts that the Defendants "store or effectively gave away $348,262 of company funds," disbursed $3,128,502 "to third parties lack[ing] documentation sufficient to deminstate that the expenses were directly attributable to Penn Social," and incurred $893,201 "in LLC credit card charges lack[ing] sufficient documentation to demonstrate that the expenses were directly attributable to Penn Social." *Id*. at 12-13. His conversion claim is legally flawed.

Defendants argue that these claims are ripe for dismissal at summary judgment because Plaintiff licensed the use of the Riot Act trademark and websites while he was continually affiliated with the LLC. Defs.' Mem. at 27. Therefore, because Plaintiff remains affiliated with the LLC,

---

[4] Plaintiff also brings this claim as a derivative plaintiff.

12

the license to use the name remains. *Id.* Defendants also argue that the conversion claims cannot be supported by alleged improper use of company funds. *Id.*

According to District of Columbia common law, a conversion claim exists when there is "an unlawful exercise of ownership, dominion, and control over the personality of another in denial or repudiation of his right to such property." *Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 251–52 (D.D.C. 2016) (quoting *Wash. Gas Light Co. v. Public Serv. Comm'n of D.C.*, 61 A.3d 662, 675 (D.C.2013)). When money is the subject of a conversion claim, Plaintiff must show that he "has the right to a specific identifiable fund of money." *Id*. (quoting *McNamara v. Picken*, 950 F.Supp.2d 193, 194 (D.D.C.2013).

Here, the undisputed facts show that Plaintiff has not identified a specific fund of money that Defendants Dawson and Heiss converted—he plainly contends that funds were either converted from the LLC for personal use or are otherwise unaccounted for. *See* Pl.'s Opp'n. at 12-13. As a basis for a conversion claim, this contention fails as a matter of law. *See McNamara v. Picken*, 950 F.Supp.2d 193, 195 (D.D.C. 2013) (recognizing that "fungible cash is precisely the type of fund that may not underlie a claim for conversion" and granting summary judgment on conversion claim where plaintiff could not identify the "exact funds" that went into the partnership and were misappropriated, and instead, only argued that "general partnership funds ... were misdirected" for other purposes). And the same is the case concerning the alleged unauthorized use of the LLC's credit. *See Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, Pa., 130 F. Supp. 3d 236, 258–59, 259–60, 2015 WL 5449791, at \*14, \*15 (D.D.C.2015) (dismissing conversion claim and recognizing "that overcharges or unauthorized charges to a credit card cannot support a conversion claim because such allegations do not call for the return of specific money").

As applied to the trademark and domain names, the availability of a conversion claim is limited to tangible property not presented here. *See Kaempe v. Myers*, 367 F.3d 958, 964 (D.C. Cir. 2004) ("an action for conversion of intangible property will lie only where such property is merged in a transferrable document and the document itself is converted."); *see also Xereas v. Heiss*, 933 F. Supp. 2d 1, 6-7 (D.D.C. 2013) (dismissing Plaintiff's claim for conversion of trademarks and domain names because they constitute intangible property that were not alleged to have "merged in any tangible documents which were transferred to the defendants."). Plaintiff has failed to put forth, and, in light of LCvR 7(h), the court is hard-pressed to find, any evidence in the record that the trademarks and domain names allegedly licensed to the Defendants was merged into any tangible document that was transferred to the defendants. Therefore, the court grants summary judgment for the Defendants on count IV of the Second Amended Complaint. Accordingly, Plaintiff's Motion for Summary Judgment as to Count IV is denied.

### 3. Breach of Contract and of the Covenant of Good Faith and Fair Dealing Claims

Plaintiff asserts breach of contract claims and claims for breach of the covenant of good faith and fair dealing, arising from both his removal as managing member and for the use of the Riot Act trademarks and domain names.[5] *See* SAC at 267-85. A claim for breach of contract requires: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Xereas*, 933 F. Supp. 2d at 8 (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). Further, a breach of the duty of good faith and fair dealing exists where a party "(1) evades the spirit of the contract, (2) willfully renders imperfect performance, or (3) interferes with performance by the other party."

---

[5] Plaintiff brings Count VI and VIII as a derivative plaintiff.

14

*C & E Servs., Inc. v. Ashland Inc.*, 601 F.Supp.2d 262, 276 (D.D.C. 2009) (citing *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C.2006)).

Plaintiff has raised a genuine issue of material fact as to whether a breach of contract occurred when he was removed as managing member. Defendants argue that they were wholly within their rights to remove Plaintiff as a managing member under Section 6.3 of the Operating Agreement for "ceas[ing] to devote such time and efforts to the business and affairs of the Company as is reasonably necessary to promote and maintain adequately the interests of the company," when the Plaintiff filed suit against the company and reduced his efforts. Defs.' Mem. at 18. However, Plaintiff has put forth evidence in the record that he continued his duties and devotion to the LLC. *See* Pl.'s Opp'n. at 14. To the extent that the Defendants' argue that Plaintiff's Superior Court lawsuit justified his removal, Defendants cite no legal authority to support their legal proposition that this would justify his removal as a matter of law. Thus, the court finds that a genuine issue exists as to whether Defendants' breached the Amended Operating Agreement.

Defendants' further contend that Plaintiff suffered no damages resulting from any alleged breach of contract, because (1) his shares in the company remained, (2) he retained his right to profits, and (3) failure to pay Plaintiff a salary cannot be a breach because the parties contracted to compensation via managing member discretion. *See* Defs.' Mem. at 19. Though it appears that the Plaintiff concedes Defendants' third point, Plaintiff points out that the removal of Plaintiff as managing member subsequently resulted in discontinuing the LLC venue as a comedy club. *See* Pl.'s Opp'n. at 16. Therefore, a genuine issue of material fact exists pertaining to damages.

Additionally, a genuine issue of material fact exists as to whether a licensing agreement for the Riot Act trademarks and domains existed between the parties. "A valid contract requires

15

'both (1) agreement as to all material terms; and (2) intention of the parties to be bound.'" *Xereas*, 933 F. Supp. 2d at 9 (quoting *Duk Hea Oh v. Nat'l Capital Revitalization Corp.*, 7 A.3d 997, 1013 (D.C.2010)). Plaintiff has put forth evidence that a jury could reasonably infer that an agreement to license the Riot Act trademarks and domain names to the LLC for compensation, and subsequent intent to be bound. *See* Pl.'s Opp'n. at 16-17.

Moving to the claim for breach of the implied covenant of good faith and fair dealing, Plaintiff has shown that a genuine issue of material fact exists. Plaintiff puts forth evidence from which a reasonable juror might infer that the Defendants' acted in bad faith when removing Plaintiff as a managing member of the LLC. *See* Pl.'s Opp at 18. Because genuine issues of fact exist regarding alleged breach of contract and breach of the implied covenant of good faith and fair dealing as it pertains to the Amended Operating Agreement, and for the breach of contract as it pertains to the alleged licensing agreement, Defendants' Motion for Summary Judgment as to Counts V, VII, and VIII is denied. For the reasons discussed in section III(B), *supra*, the court grants summary judgment for the Defendants as to Count VI.

### 4. The Fraud Claims

The Plaintiff asserts various fraud-based allegations against the Defendants. These claims arise from the alleged efforts by Defendants to fraudulently induce Plaintiff into a business relationship with promises to pay him wages, to make him the "face" of the business, and that he would retain ownership of his trademarks and web domains. *See* SAC at ¶¶ 286-306.

In support of summary judgment, Defendants argue that any allege false statements cannot be considered material facts because they were not ultimately included in the Amended Operating Agreement. *See* Defs.' Mem. at 17-18; Defs.' Reply at 7. Defendants further contend that Plaintiff suffered no provable damages, because his investment has increased in value. *See* Defs.' Reply at

8-9. Plaintiff disputes Defendants' two arguments. First, he argues that he relied on Defendants' allegedly false assurances that "we're all a team" that would collectively act "for the same purpose." *See* Pl.'s Opp'n. at 19-20. Second, he argues that the law requires damages and injury, not "lack of any profit." *Id*. at 20.

To prove fraud under District of Columbia Common Law, the plaintiff is required to show: (1) the defendants made a false representation; (2) in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive the plaintiff; (5) the plaintiff acted in reasonable reliance on that representation; (6) which consequently resulted in provable damages. *See*, *e.g.*, *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 24 F. Supp. 3d 32, 46–47 (D.D.C. 2014) (citing *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992)). Accordingly, "the elements of fraud and fraudulent inducement are the same." *Xereas v. Heiss*, 933 F. Supp. 2d 1, 10 (D.D.C. 2013) (citing *In re U.S. Office Prod. Co. Sec. Litig.*, 251 F.Supp.2d 77, 100 (D.D.C.2003)).

Additionally, the elements of negligent misrepresentation are similar to those of a common law fraud claim, except that negligent misrepresentation "do[es] not include the scienter requirements of a fraud claim." *Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 186 (D.D.C. 2016) (quoting *Parr v. Ebrahimian*, 774 F.Supp.2d 234, 240 (D.D.C.2011)); *see Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C.2015) ("a complaint alleging negligent misrepresentations need not allege that the defendant had knowledge of the falsity of the representation or the intent to deceive.").

Finally, "a constructive fraud claim also includes all the same elements as actual fraud except the intent to deceive." *Intelect Corp.*, 160 F. Supp. 3d at 186–87 (quoting *Cordoba Initiative Corp. v. Deak*, 900 F.Supp.2d 42, 50 (D.D.C.2012)); *see also Himmelstein v. Comcast*

*of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 59–60 (D.D.C. 2012).  In addition to those elements, a constructive fraud claim also "requires a plaintiff to demonstrate the existence of a confidential relationship between the plaintiff and defendant, 'by which the defendant is able to exercise extraordinary influence over plaintiff.'"  *Id*. (quoting *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F.Supp.2d 1, 6 n. 7 (D.D.C.2009)).

Plaintiff's allegations, insofar as they are supported by any evidence in the record, fall short of establishing the necessary elements of fraud.  At most, Plaintiff has demonstrated that he relied (albeit without justification for so relying) upon Defendants' suggestion that the three managing members "were all a team" that would collectively act "for the same purpose."  *See* ECF No. 148-12.  Opinions, predictions, and hopes for the future "do not constitute representations of material fact upon which a plaintiff successfully may place dispositive reliance."  *Howard v. Riggs Nat. Bank*, 432 A.2d 701, 706 (D.C. 1981).  Here—the first element of fraud—is where Plaintiff's claims fails.  Plaintiff points to no evidence in the record that he relied on Defendants' allegedly false representations regarding trademark ownership, guaranteed salary, and being the "face" of the business to support his fraud claims.  To the contrary, the representation that Plaintiff argues he relied on—that Defendants Heiss and Dawson assured him they were "all a team"—merely constitutes Defendants' opinion or aspiration for their future business relationship.  What it does not constitute is a false representation of a material fact on which he could have relied.  Plainly, Plaintiff fails to refute Defendants' argument that they made a false representation in reference to a *material fact*.  Because there is no genuine issue of material fact regarding the first element of fraud, the court need not reach the other elements of fraud, negligent misrepresentation,

conspiracy[6] to defraud, or constructive fraud. Therefore, Defendants' Motion for Summary Judgement as to Counts IX through XII is granted.

### 5. The Claims Brought Under the ECPA and the SCA

Plaintiff asserts claims against all Defendants for unauthorized interception and disclosure of electronic communications under the Electronic Communications Privacy Act ("ECPA"), in addition to a claim for unlawful access to stored communications under the Stored Communications Act ("SCA"). *See* SAC at ¶¶ 311-26; *see also* 18 U.S.C. §§ 2511(1)(a), (1)(c); 18 U.S.C. § 2701(a).

Defendants argue that the undisputed facts do not support Plaintiff's ECPA and SCA claims. *See* Defs.' Mem. at 21. Defendants contend that the factual record shows that Plaintiff gave the LLC permission to access, control, and develop the website and email accounts. *Id.* Defendants further contend that these were company email accounts maintained on LLC serves, and not private email accounts. *Id.* Finally, Defendants contend that, to the extent that Defendants accessed Plaintiff's company email account, it was for the purpose of conducting company business after "Plaintiff substantially curtailed his day-to-day involvement with the LLC." *Id.*

Plaintiff argues that Defendants violated the ECPA and SCA by gaining unauthorized access to, and proceeding to send emails from, his Riot Act email account. Pl.'s Opp'n. at 20-21. In support of these claims, Plaintiff contends that he retained ownership of the Riot Act domain names, and that his "longstanding" Riot Act email was used for personal emails, including emails to his attorney. *Id.* Therefore, plaintiff argues that Defendant's access of Plaintiff's Riot Act email account is a violation of the ECPA and the SCA. *Id.* In doing so, Plaintiff supports his legal

---

[6] Conspiracy "is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Xereas v. Heiss*, 933 F. Supp. 2d 1, 10 (D.D.C. 2013) (quoting *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C.2007)).

conclusions with conclusory citations to the ECPA and SCA, devoid of a single case citation supporting his legal propositions. *See id.* Nonetheless, this court proceeds to determine whether there is a genuine issue of material fact on which these claims can survive summary judgment.

The SCA creates a civil cause of action for damages against "whoever—(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system[.]" 18 U.S.C. § 2701(a). Such conduct is not a violation of the SCA, however, if authorized "by the person or entity providing a wire or electronic communications service." *Id.* § 2701(c). Several Courts have held, and this court agrees, that a private company providing an "electronic communication service" to its employees can provide such authorization. *See, e.g., Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 334 (D.D.C. 2011) (collecting cases); *Shefts v. Petrakis*, 758 F. Supp. 2d 620, 635 (C.D. Ill. 2010) (Denying summary judgment for the Plaintiff where Defendant "was authorized under the Employee Manual to access and monitor Plaintiff's communications.").

Viewing the facts in a light most favorable to the Plaintiff, the parties do not dispute that Plaintiff provided Squiid, Inc. with permission to transfer the control of the email domains to the LLC. *See* Pl. Opp'n. at 20. Further evidencing control, Plaintiff has not produced evidence to dispute the fact that the LLC "paid for the email accounts [that] were maintained on LLC servers." Defs.' Mem. at 21. The Defendants therefore have proffered evidence that the LLC maintained control of "a facility through which an electronic communication service is provided[,]" 18 U.S.C.

§ 2701(a), regardless of whether Plaintiff maintained intangible property ownership of the Riot Act domain names.[7]

Once Defendants challenged the factual basis for Plaintiff's SCA claim, Plaintiff had the affirmative burden to produce evidence from which a reasonable jury could find that Defendants gained unauthorized access to Plaintiff's emails in "electronic storage." *See Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Plaintiff has proffered only speculation, *see* Pl. Opp'n. at 21 (citing Ex. K), and not any facts that would allow a reasonable fact finder to make the required findings. *See Coates*, 2018 WL 1210861 at *2 ("[c]onclusory allegations without any factual support in the record cannot create a genuine dispute sufficient to survive summary judgment."). Because the LLC "is the provider of the 'service,' neither it nor its employees can be liable under § 2701." *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996).

Further, the ECPA creates a civil cause of action against persons who "intercept" electronic communications. *See* 18 U.S.C. § 2511; *see also Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 556 (S.D.N.Y. 2008); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113-14 (3d Cir. 2003), as amended (Jan. 20, 2004) (holding that defendant did not "intercept" plaintiff's email located on defendant's server because the company did not access email at initial transmission). The Defendants contend, and the Plaintiff fails to refute with evidence in the record,

---

[7] Further, the factual record is devoid of evidence that Defendants accessed emails in "electronic storage" as defined by the SCA. *See Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1205 (S.D. Cal. 2008); *Hately v. Watts*, 309 F. Supp. 3d 407, 411 (E.D. Va. 2018) (granting summary judgment where plaintiff failed to produce evidence that Defendant accessed plaintiff's unopened emails).

that Defendants simply reviewed stored emails, and did not "intercept" emails currently in transit at the time of the alleged conduct.

Based on this record, Plaintiff has failed to establish, as a matter of law, that Defendants exceeded their authorized access of Plaintiff's Riot Act email account under § 2510(17)(A) or otherwise intercepted Plaintiff's Riot Act emails under §§ 2511(1)(a), (1)(c). Therefore, the Defendants' Motion for Summary Judgment as to Counts XIII through XV of the Second Amended Complaint is granted. Accordingly, Plaintiff's Motion for Summary Judgment as to Count XIII is denied as moot.

### 6. The Claims for Misappropriation of Trade Secrets and for Intentional Interference with Business Relations

Plaintiff also brings claims for the misappropriation of trade secrets and for *intentional* interference with business relations.[8] *See* SAC at ¶¶ 327-45 (emphasis added). Regarding the misappropriation of trade secrets allegation, Defendants argue that Plaintiff cannot "make out a claim" for misappropriation because a list of contacts and social media accounts does not qualify as trade secrets. Defs.' Mem. at 28 (citing *Council on American-Islamic Relations Action Network Inc. v. Gaubatz*, 82 F.Supp.3d 344 (D.D.C. 2015) (list of donors not a trade secret and no showing of harm from disclosure)). Because Plaintiff has not addressed this argument in response, this court will consider that argument conceded and will enter judgment in favor of the Defendants. *See Franklin v. Potter*, 600 F.Supp.2d 38, 60 (D.D.C.2009) (treating defendant's argument in motion for summary judgment as conceded where plaintiff failed to address it in his response).

Under D.C. law, intentional interference with a prospective business relation requires the Plaintiff to show evidence of "(1) the existence of a valid business relationship or expectancy, (2)

---

[8] Plaintiff also brings Count XVII as a derivative plaintiff.

knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damages." *Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 51–52 (D.D.C. 2009) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002). The Plaintiff "must make a 'strong showing of intent' to disrupt a business relationship or expectancy to establish a claim for interference. *Id*. (quoting *Bennett Enters. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C.Cir.1995) (noting that "a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability")).

Though Plaintiff raises an issue of material fact, including whether any business relationships existed, plaintiff fails to sufficiently refute Defendants' argument that they were not aware of any specific prospective business relation they were interfering with. *See* Defs.' Mem. at 28. Defendants further add, and the Plaintiff fails to refute, that Defendants "would have provided his email password to him had he requested it." *See* Defs.' Reply at 15. Therefore, Defendants' Motion for Summary Judgment as to Counts XVI and XVII is granted.

### 7. The Unjust Enrichment and Quantum Meruit Claims

Plaintiff brings claims for unjust enrichment and quantum meruit.[9] *See* SAC at ¶¶ 346-51, 385-85. Plaintiff's unjust enrichment claims are based on the alleged licensing of the Riot Act trademarks to the LLC without receiving compensation. *See* Pl.'s Opp'n. at 17, 24-25. Since these causes of action are alternative remedies, the court considers these remedies together.

Regarding the unjust enrichment claim, Defendants argue that the Plaintiff received financial benefit for his work, and further that the existence of the Amended Operating Agreement precludes recovery. *See* Defs.' Mem. at 29. Defendants' additionally argue that the quantum

---

[9] Plaintiff also brings Count XVIII as a derivative plaintiff.

meruit claim should be dismissed for failure to state a claim upon which relief can be granted. *See id*. at 33-34.

As a preliminary matter, the Plaintiff's claim for quantum meruit in the complaint is based on Plaintiff allegedly "render[ing] valuable services to the LLC in his role as General Manager, working tirelessly and often working 20 hour days and sleeping at the Venue." SAC at ¶383. Plaintiff further alleges that "the services provided by Plaintiff were accepted, used, and enjoyed by the LLC under circumstances that reasonably notified the LLC that Plaintiff expected to be paid." Id. at ¶ 384. However, in his opposition, Plaintiff attempts to argue that summary judgment is precluded on his quantum meruit claim because "Plaintiff provided a valuable service (use of his trademark) to Defendants, from whom recovery is sought. Defendants accepted and enjoyed use of the RIOT ACT name – and continue to do so to this day – and it was plain that Plaintiff expected to be compensated for such use." Pl.'s Opp'n. at 17, n.7. "[A] plaintiff may not amend his complaint through his opposition papers." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 71 (D.D.C. 2007) (citing *Doe I v. State of Israel*, 400 F.Supp.2d 86, 100 (D.D.C.2005)). The court therefore only considers the quantum merit claim as it pertains to the compensation for his work for the LLC. Because Defendants squarely addressed these allegations, and because Plaintiff has not, the court will consider the claim for quantum meruit conceded and summary judgment granted in favor of the Defendants as to Count XXIII. *See Franklin v. Potter*, 600 F.Supp.2d 38, 60 (D.D.C.2009) (treating defendant's argument in motion for summary judgment as conceded where plaintiff failed to address it in his response).

With respect to the unjust enrichment claim, a party states a cognizable claim for unjust enrichment when: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust."

24

*Peart v. District of Columbia Hous. Auth.*, 972 A.2d 810, 813 (D.C. 2009). (quoting *News World Communic'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)). When these elements are met, "the recipient of the benefit has a duty to make restitution to the other person if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for the recipient to retain it." *Vila v. Inter-Am. Inv. Corp.*, 83 F. Supp. 3d 85, 90 (D.D.C. 2015) (quotations omitted).

Defendants argument for summary judgment is based in compensation for the Plaintiff's work for the LLC. *See* Defs.' Mem. at 29. However, in accordance with the complaint, Plaintiff correctly points out that a genuine issue of material fact exists over whether the plaintiff conferred a benefit on the LLC through allegedly licensing the Riot Act trademarks, and whether that benefit was unjust when Plaintiff "never received a cent for *the use of his mark*." Pl.'s Opp'n. at 24-25 (emphasis added).

Here, while contracts existed between Plaintiff Xereas, Defendant Dawson, and Defendant Heiss for Plaintiff's salary and compensation, there was no written contract between the relevant parties to the use of the Riot Act trademarks: Plaintiff and the LLC. See Pl.'s Opp'n. at 24-25 (citing Ex. P). Thus, the existence of another contract will not bar Plaintiff's unjust enrichment claim, and the court will deny summary judgment as to Count XVIII allow this claim to proceed.

### 8. The Civil RICO Claim

Plaintiff brings a civil RICO claim pursuant to 18 U.S.C. § 1962 and a civil conspiracy claim under District of Columbia common law. [10] *See* SAC at ¶¶ 389-95. In support of their motion, Defendants argue that no evidence of racketeering activities exist and that, to the extent RICO predicates exist, they were not the proximate cause of Plaintiff's injuries. Defs.' Mem. at

---

[10] Plaintiff also brings these claims as a derivative plaintiff.

25-26. In response, Plaintiff contend that the Defendants engaged in the following predicate acts: (1) wire fraud, evidenced by the alleged misappropriation of the LLC's assets; (2) unauthorized interception, access, and disclosure of Plaintiff's emails, and (3) tax fraud. Pl.'s Opp'n. at 22-23.

A claim for the violation of civil RICO requires "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62 (1997); *see* 18 U.S.C. § 1962(c). A "[p]attern of racketeering activity" requires at least two acts of "racketeering activity," or "predicate acts." *Id.*; *see* 18 U.S.C. § 1961(5). It is axiomatic that, "a plaintiff may not amend his complaint through his opposition papers." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 71 (D.D.C. 2007) (citing *Doe I v. State of Israel*, 400 F.Supp.2d 86, 100 (D.D.C.2005)). When the predicate acts are based in fraud, as all of the presently alleged predicate acts are, they are subject to the heightened pleading standard of Rule 9(b). *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 157 (D.D.C. 2016), aff'd, 728 F. App'x 12 (D.C. Cir. 2018) (citing *Sandza v. Barclays Bank PLC*, 151 F.Supp.3d 94, 108 (D.D.C. 2015)). This heightened pleading standard requires the Plaintiff to allege the "time, place and content of the false misrepresentations," in addition to "the fact[s] misrepresented, and what was retained or given up as a consequence of the fraud." *Id*. The D.C. Circuit has cautioned that RICO claims premised on fraud "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D C. Cir. 2001).

At the outset, for reasons discussed above, the alleged fraudulent misrepresentations Defendants made to the Plaintiff cannot be the basis for Plaintiff's RICO claim. *See* Section IV(B)(4), *supra*. In opposition to Defendants' motion, Plaintiff attempts to improperly repurpose

his civil RICO claim to include wire fraud and tax fraud as the predicate acts. See Pl.'s Opp. at 22-23. These newly alleged predicate acts cannot be the basis of Plaintiff's RICO claim.[11] Further, the Plaintiff has failed to point to evidence in the record of these alleged predicate acts sufficient to overcome a finding of summary judgment for the Defendants. *See id.* Therefore, Defendants' Motion for Summary Judgment as to Count XXV is granted.

## D. Dismissal Under 12(b)(6)

Defendants' Motion for Summary Judgment concerning Plaintiff's intentional infliction of emotional distress ("IIED") claim, breach of fiduciary duty claim, DC. Stat 29.804.10 claim, and quantum meruit claim does not attack the factual basis which underpins the complaint, but rather attacks the quality of the Plaintiff's pleading. *See* Defs.' Mem. at 30-31. Accordingly, while Defendants bring their motion under Fed. R. Civ. P. 56, it is in actuality a *de facto* motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as it pertains to these claims. *See Davis v. Michigan Dep't of Corr.*, 746 F.Supp. 662, 664-65 (E.D. Mich. 1990) ("[W]hen a Rule 56 motion for summary judgment can be granted without considering extraneous materials—such as affidavits— the district court has the discretion to view such a motion as a Rule 12 motion to dismiss."). Thus, it is within the court's discretion to convert a Rule 56 motion to a Rule 12(b)(6) motion when the dispositive motion "can be granted without considering extraneous materials." *Id.* at 665.

### 1. The Intentional Infliction of Emotional Distress Claim

---

[11] Though Defendants have not fashioned their argument as a motion to dismiss for failure to state a claim, the Court is within the bounds of Federal Rule of Civil Procedure 56(f) in dismissing Plaintiff's RICO claim. Defendants raised the argument that Plaintiffs pleadings are devoid of alleged predicate acts to support. *See* Defs.' Mem. at 26. Defendants cite to case law dismissing a civil RICO claim for failure to meet Rule 9(b)'s pleading standard. *Id.* Plaintiff's responded, alleging for the first time, that wire fraud and tax fraud are predicate acts supporting their RICO claim. *See* Pl.'s Opp'n. at 22-23. Finally, Defendants correctly pointed out that that Plaintiff's fail to establish the basic elements of wire fraud and tax fraud. *See* Defs.' Reply at 13. Therefore, Plaintiff was on notice that his complaint as it pertains to the predicate acts necessary for RICO may not have met the standard for Rule 9(b).

Plaintiff's IIED claim against Defendants Dawson and Heiss arises from Defendants Dawson's and Heiss' alleged sexual misconduct. *See* SAC at ¶¶ 357-60; ECF No. 148-12, (Xereas Tr. at 256:10-257:2). Defendants contend Plaintiff failed to state a claim upon which relief can be granted on three grounds: (1) the conduct he alleged does not rise to the requisite level of "extreme and outrageous" conduct; (2) he does not allege emotional distress with any specifics, and (3) nor does the Plaintiff allege any injuries proximately caused by Defendants' conduct. Defs.' Mem. at 30-31. Upon consideration, Plaintiff's IIED claim must be dismissed because he fails to allege facts which might satisfy any element of the tort or which would entitle him to relief.

To state an IIED claim in the District of Columbia, a plaintiff must allege "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Sere v. Group Hosp., Inc.*, 443 A.2d 33, 37 (D.C. 1982) (citing Restatement (Second) of Torts § 46 (1965)), cert. denied, 459 U.S. 912 (1982). To be "extreme and outrageous" in satisfaction of the first element under D.C. law, the defendant's conduct must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sere*, 443 A.2d at 37 (citing Restatement (Second) of Torts § 46 (1965)). While Plaintiff alleges in a conclusory manner that Defendants' actions were "atrocious and utterly intolerable in a civilized community," he fails to allege facts that support such a conclusion.[12] SAC at ¶¶ 359.

---

[12] To the extent that Plaintiff attempts to allege IIED in concert with breach of contract, this argument fails as a matter of law. For an IIED claim to be actionable in connection with a breach of contract claim, the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship. *See Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008) ("The tort must stand as a tort even if the contractual relationship did not exist").

In response to Defendant's motion, Plaintiff claims that Defendant Heiss initiated or otherwise engaged in sexually inappropriate conversation, used offensive or suggestive language with employees, and invited individuals to see or feel her breasts. Pl.'s Opp'n. at 25-26. While the court agrees that this alleged conduct can certainly be contrary to professional standards and upsetting to persons like Plaintiff, it does not approach the high "extreme and outrageous" standard required by D.C. law. *See Culler v. Exal Corp.*, 193 F.Supp 3d 850, 853 (N.D. Ohio, 2016) (sexually-charged remarks and alleged sexual harassment, *in addition to* hours of false imprisonment without food or water did not rise to the level of extreme or outrageous conduct for the purposes of an IIED claim). Moreover, most relevant factual allegations made by Plaintiff in the instant case do not directly involve Plaintiff, but rather other individuals. In fact, the only factual allegations Plaintiff made which directly implicate him are "mere insults" and obscenities which this court has found do not rise to the level of extreme and outrageous conduct. *Halcomb v. Woods*, 610 F.Supp. 2d 77, 80 (D.C. 2009) (liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities") (quoting Restatement (Second) of Torts § 46). Plaintiff's cited authority, *Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 278, 283 (D.D.C. 2012) is distinguishable. In *Hoskins*, the Court reasoned that IIED claim turned on defendants' "blatant and repeated instances of inappropriate conduct," not alleged in the present instance. 839 F. Supp. 2d at 283.

Moreover, the Plaintiff makes no factual allegations indicating that Defendants acted "intentionally or recklessly" or that the plaintiff suffered "severe emotional distress" as a *result* of the defendants' behavior. *See Khan v. Parsons Global Servs.*, 521 F.3d 421, 428 (D.C. Cir. 2008) (emphasis added). Plaintiff alleges that he suffered various stress-related medical conditions as a result of the Defendants' actions. *See* Pl.'s Opp'n at 26. Even if this court were

to accept as true Plaintiff's allegation of extreme and outrageous conduct on the part of Defendants, Plaintiff lacks any evidence to support claims that he suffered emotional distress or evidence that such distress occurred as a *result* of said conduct. However troubling Plaintiff may have perceived the Defendants' alleged conduct, "as a matter of law, it [is] not sufficiently extreme and outrageous to state a claim of intentional infliction of emotional distress." *Carty v. CVS Pharmacy, LLC*, 264 F. Supp. 3d 190, 197 (D.D.C. 2017) (collecting cases). Defendants demonstrated beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Therefore, Count XX is dismissed.

### 2. The Breach of Fiduciary Duty Claim

Plaintiff claims that Defendants Dawson and Heiss allegedly breached their fiduciary duty of loyalty and care. [13] *See* SAC at ¶¶361-374. Defendants maintain that Plaintiffs failed to plead any facts supporting a breach of fiduciary duty, insofar as the Plaintiff alleges the Defendant's acted in another's interest in dealing with the LLC. *See* Defs.' Mem. at 25-26. Furthermore, Defendants contend that because Plaintiff's initial investment is worth more now, the Plaintiff suffered no injury. *See Id*.

To state a claim for breach of fiduciary duty under D.C. law, the Plaintiff must allege facts sufficient to establish: (1) defendant owed plaintiff a fiduciary duty; (2) a breach of that; and (3) proximate cause and injury to be inferred from those facts. *See Command Consulting Group, LLC v. Neuraliq, Inc.*, 623 F.Supp.2d 49, 54 (D.D.C. 2009) (citing *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F.Supp.2d 66, 75 (D.D.C.1998)). The Plaintiff "must allege facts from which proximate cause and injury may be inferred if they seek compensatory damages." *Id*. Generally, a contract does not create a fiduciary duty, unless the parties "extended their relationship beyond

---

[13] Plaintiff also brings this claim as a derivative plaintiff.

the limits of the contractual obligations to a relationship founded upon trust and confidence." *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008). This requires "a 'special confidential relationship' that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind." *Ying Qing Lu v. Lezell*, 919 F. Supp. 2d 1, 6 (D.D.C. 2013); (quoting *High v. McLean Fin. Corp.*, 659 F.Supp. 1561, 1568 (D.D.C.1987)).

In his complaint, Plaintiff puts forth conclusory allegations that the Defendants "failed to disclose all material facts concerning the business as well as all facts involving membership interests of the LLC." SAC at ¶ 367. In response to the present motion, Plaintiff argues that this included Defendant Heiss being "brought in to Riot Act" so Defendant's Dawson and Heiss could control the decisions of the LLC. Pl.'s Opp'n. at 28. The court need not delve into the intricacies of the Plaintiff's relationship with Defendants Dawson and Heiss since it is clear that a special confidential relationship transcending an ordinary business transaction did not take place. Therefore, Count XXI is dismissed.

### 3. The Claim for Accounting and for Documents

Plaintiff brings claims for alleged deficiencies in the production of documents pursuant to DC Stat. 29.804.10 and an action for accounting under D.C. common law.[14] *See* SAC at ¶¶ 375-81, 386-88. In support of his claim, Plaintiff argues that, after multiple requests and demands, Defendants have failed to provide specific documents and an accounting of LLC funds.

"An accounting is a detailed statement of debits and credits between parties arising out of a contract or a fiduciary relation." *Bates v. Nw. Human Servs., Inc.*, 466 F.Supp.2d 69, 103 (D.D.C.2006) (quotation marks omitted). "Such relief may be obtained at the close of litigation . . . as long as the plaintiff is able to show that 'the remedy at law is inadequate.'" *Id.* (citations

---

[14] Plaintiff also brings this claim as a derivative plaintiff.

omitted).  An account therefore may "be appropriate when a plaintiff is unable 'to determine how much, if any, money is due to him from another.'"  *Id.* (quoting *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir.1972)).  Importantly, "an accounting is 'an extraordinary remedy' that is only appropriate, if at all, after liability has been determined."  *Armenian Assembly of America, Inc. v. Cafesjian*, 692 F.Supp.2d 20, 48 (D.D.C.2010).

The Plaintiff's factual allegations in the complaint pertaining to the accounting relief, even if accepted as true, do not "plausibly give rise to an entitlement to [the forms of] relief" he seeks."  *Wilson v. On the Rise Enterprises, LLC*, 305 F. Supp. 3d 5, 20 (D.D.C. 2018) (quoting *Iqbal*, 556 U.S. at 679).  First, an accounting relief only arises when "accounts between the parties are of such a complicated nature that they can be satisfactorily unraveled only by a court of equity."  *Cauderlier & Assocs., Inc. v. Zambrana*, 527 F. Supp. 2d 142, 154 (D.D.C. 2007) (quoting *Donovan v. U.S. Postal Service*, 530 F.Supp. 894, 900–01 (D.D.C. 1981)).  Plaintiff has not alleged that his accounts with the LLC are so complicated in nature that an accounting is appropriate.  *Cf. Donovan*, 530 F.Supp. at 901 ("The rights of between 500,000 and 700,000 employees are at stake.").  Second, the Plaintiff must show "that the remedy at law is inadequate."  *Bates*, 466 F.Supp.2d at 103 (internal citation omitted).  The Plaintiff has not put forth any evidence to support a finding that a genuine issue of material fact exists regarding the production of accounting documents.  *See* Pl.'s Opp'n. at 26-27.  Therefore, Counts XXII and XXIV are dismissed.

## IV.    CONCLUSION

An order providing for the determinations set forth herein appears as Document No. 187 in the ECF records of the Court.

_____
DEBORAH A. ROBINSON
United States Magistrate Judge

32